THE LAW OFFICE OF
THOMAS M. MULLANEY
489 5TH Avenue, 19TH FLOOR
New York, New York 10017
212-223-0800
Attorneys for Plaintiff Paul Rose

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PAUL ROSE,

                Plaintiff,

      -against-

PAUL DAVID HEWSON p/k/a BONO, DAVID HOWELL
EVANS p/k/a THE EDGE or EDGE, ADAM CLAYTON,
LAURENCE JOSEPH MULLEN JR., and ISLAND
RECORDS, a division of UNIVERSAL MUSIC GROUP,
INC.

                Defendants.
------------------------------------------------------------------X

Case No.:

**COMPLAINT**

Plaintiff PAUL ROSE ("Plaintiff" or Rose), by his attorney, Thomas M. Mullaney, as and for his complaint against Defendants PAUL DAVID HEWSON p/k/a BONO, DAVID HOWELL EVANS p/k/a THE EDGE or EDGE, ADAM CLAYTON, LAURENCE JOSEPH MULLEN JR., and ISLAND RECORDS, a division of UNIVERSAL MUSIC GROUP, INC., (collectively "Defendants"), alleges as follows:

**JURISDICTION AND VENUE**

1.    This is an action is brought and subject matter jurisdiction lies within this Court, pursuant to 28 U.S.C. Sections 1331 and 1338. This Court has federal question jurisdiction in this matter in that Plaintiff seeks damages and injunctive relief against Defendants under Sections 501, 502, 504 and 505 of the Copyright Act of 1976, 17 U.S.C. Section 101 *et seq.* The Court has pendent jurisdiction over the claims asserted herein that arise under state law,

including the claim for quantum meruit and unjust enrichment, in that such claims flow from a common nucleus of operative facts.

2.  Venue lies within this Court pursuant to 28 U.S.C. Sections 1391 and 1400 in that a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District. In particular, on information and belief, the Defendants carry out substantial, ongoing business activities in this District and are subject to personal jurisdiction for venue purposes in this District. In addition, a substantial part of Defendants' acts and omissions in commercially exploiting the musical composition at issue has occurred and is occurring in this District.

3.  Plaintiff demands a trial by jury.

## PARTIES

4.  Plaintiff Paul Rose is an internationally renowned writer, composer, guitarist and recording artist with twelve solo albums. He is a citizen of the United Kingdom and resides in New York.

5.  On information and belief, Defendant Paul David Hewson p/k/a Bono ("Bono") is a writer, composer and publisher of the infringing composition and performer of the infringing sound recordings, and resides in New York, New York.

6.  On information and belief, Defendant David Howell Evans p/k/a The Edge or Edge ("Edge") is a writer, composer and publisher of the infringing composition and performer of the infringing sound recordings, and resides in California.

7.  On information and belief, Defendant Adam Clayton ("Clayton") is a writer, composer and publisher of the infringing composition and performer of the infringing sound recordings, and resides in Ireland.

8.  On information and belief, Defendant Laurence Joseph Mullen Jr. ("Mullen") is a

writer, composer and publisher of the infringing composition and performer of the infringing sound recordings, and resides in Ireland.

9. On information and belief, Island Records, a division of Universal Music Group, Inc., is a corporation that manufactures and distributes records and albums with the infringing composition and sound recordings, and has its principal place of business in New York.

## STATEMENT OF FACTS

10. In England in 1989, Rose wrote and composed the original musical composition entitled "Nae Slappin," which consists wholly of original material (referred to here in as "Plaintiff's Work"). Plaintiff's Work was first published in England no later than the Fall of 1990, and application for its copyright registration was filed in April, 1991 with the Mechanical Copyright Protection Society in England, resulting in license number No. 1696548A. Plaintiff's Work was and is copyrightable under the laws of the United States.

11. In the summer of 1989, Rose recorded a demo tape that included Plaintiff's Work and provided it to Defendant Island Records through its agents. Plaintiff's demo tape circulated to numerous senior executives at Island Records, including Managing Director Marc Marot and Island's co- founder Graeme Goodall. Mr. Marot confirmed that he had received the demo tape, was playing it, and liked the music. Plaintiff's Work was played and repeatedly listened to in the Island Records office, including by senior executives Clive Wills, Ian Moss and Nick Angel.

12. In 1989, Island Records signed the band U2, which was and is comprised of Defendants Bono, Edge, Clayton and Mullen (collectively, "U2 Defendants"). Between 1989 and 1991, the U2 Defendants were often in the Island Records offices and Defendants Bono and Edge were also using Island's recording studio at St. Peter's Square in London. Defendants Bono and Edge were there composing and recording the soundtrack for a stage production of A

3

Clockwork Orange. That stage adaptation opened in early 1990 in London, and Defendants Edge and Bono had begun the soundtrack in September of 1989.

13. Soon after Defendants Bono and Edge finished working on A Clockwork Orange, U2 had begun recording sessions for "Achtung Baby." Going into the recording sessions, U2 was seeking a stark departure from their previous music, and their trademark sound and rock-anthem lyrics. Although perhaps the most popular rock band in the world in the 1980s, by that decade's end the band felt in need of reinvigoration.

14. U2's last album of the 80s was "Rattle & Hum," which achieved commercial success but received only lukewarm critical reviews. Critics felt that U2's sound had become ponderous, and its style pretentious. For "Achtung Baby," one of its producers, Brian Eno, said that his role was "to come in and erase anything that sounded too much like U2." Towards the end of the band's tour following Rattle and Hum, Bono announced on-stage that it was "the end of something for U2" and that "we have to go away and…dream it all up again."

15. To prepare for the "Achtung Baby" sessions, The Edge had listened to electronic dance music and to industrial bands like Nine Inch Nails, the Young Gods, and KMFDM. On the whole album, as well as "The Fly," Edge "eschewed his minimalistic approach to guitar-playing and his hallmark delay-heavy, chiming sound in favor of a style that incorporated more solos, dissonance, and feedback."

16. Moreover, beyond the new layered, distorted guitar sound of "The Fly," the song is driven by industrial-style percussion that marks a departure from the distinct sound of the band's drummer, Larry Mullen, Jr. In fact, "The Fly" was chosen as the first single from "Achtung Baby" because its dance beats, distorted vocals, and hard industrial edge sounded nothing like typical U2. U2 was announcing a new musical direction even in the song's title.

4

"The Fly" is a direct reference to "The Metamorphosis" by Franz Kafka, in which the protagonist changes overnight from a travelling salesman into a giant insect, or fly.

17. On October 21, 1991, Defendants released "The Fly," (also referred to as the "Infringing Work") the pre-release single for the seminal album "Achtung Baby," released on November 18, 1991. "The Fly" was the second song of U2 to reach the top of the UK Singles Chart, and it also reached number one in Ireland and Australia. In the United States, it peaked at number 61.

18. More than just reflecting the influence of an alternative sound, "The Fly" copied and incorporated substantial, distinct, important and recognizable portions of Plaintiff's Work. Numerous obvious similarities between the songs exist:

    a. The Infringing Work features an elaborate and distinctive guitar solo nearly identical to the one in Plaintiff's Work.

    b. The guitar hook in the songs is the same.

    c. The percussion in "The Fly" accentuates the same points in the bass line as in Plaintiff's Work.

    d. The dimensions of sound of the songs are substantially similar or literal in specific fragments.

19. After listening to Plaintiff's Work and the Infringing Work, an ordinary lay observer would reasonably find that the songs are substantially similar and that an infringement has occurred. Indeed the similarities between Plaintiff's Work and the Infringing Work are so strikingly similar that independent creation is precluded.

20. Defendants published and continue to publish the Infringing Work for commercial exploitation without Plaintiff's consent or agreement and without providing Plaintiff with any

credit. The inclusion of the signature elements of Plaintiff's Work greatly enhances the musical and financial value the Infringing Work.

21. Currently, U2 Defendants continue to play a recorded version of the Infringing Work during intermission at their live concerts and the song continues to be publicly available for sale.

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT

22. Plaintiff incorporates by this reference each of the allegations contained in paragraphs 1 through 21 above as set forth in full.

23. From on or about 1991 to the present, Defendants have knowingly and intentionally infringed the statutory copyright in Plaintiff's Work, including by substantially copying; publicly performing; making and distributing or authorizing the making and distribution of the Infringing Work; participating in and furthering such infringing acts or shared in the proceeds therefrom, all through substantial use of Plaintiff's Work in and as a part of the Infringing Work.

24. Defendants participated in and contributed to the unauthorized copying of Plaintiff's Work in the creation of the Infringing Work.

25. Defendants participated in and contributed to the unauthorized creation and distribution of cassettes, CDs, digital downloads and other means of physical and digital delivery throughout the world, serving to reproduce the Infringing Work.

26. Defendants participated in and contributed to the unauthorized public performance of the Infringing Work.

27. Defendants participated in and contributed to the unauthorized use of the

Infringing Work to promote sales of U2's albums, including "Achtung Baby," "Achtung Baby's 20th Anniversary Edition," "U22," "Greatest Hits Part 1," and "The Complete U2."

28. Defendants knowingly utilized Plaintiff's Work in the Infringing Work with knowledge of their failure to credit or acknowledge Plaintiff in any way.

29. Defendants' infringing acts were, and are continuing to be, committed willfully.

30. Plaintiff has no adequate remedy at law.

31. Plaintiff has incurred actual damages in an amount to be proven at trial, but no event less than $5,000,000.00, plus attorney's fees and interest.

## COUNT II

### CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT

32. Plaintiff incorporates by this reference each of the allegations contained in paragraphs 1 through 31 above as set forth in full.

33. With knowledge of their infringement, the Defendants have induced, caused or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

34. The Defendants had the right and ability to control other infringers and have derived financial benefit from that infringement such that the Defendants should be found to be vicariously liable.

35. Here, all Defendants profit from the dissemination, sale, distribution, and licensing of the song "The Fly."

36. Furthermore, Defendants, as producers, publishers, songwriters, and copyright holders, all have control over the dissemination, sale, distribution, and licensing of the song "The Fly."

37. Without authorization or permission, Defendants continue to exploit Plaintiff's Work, reaping tremendous financial rewards and other pecuniary benefits, to the detriment of Plaintiff.

## COUNT III

## EQUITABLE RELIEF / RIGHT OF ATTRIBUTION

38. Plaintiff incorporates by this reference each of the allegations contained in paragraphs 1 through 37 above as set forth in full.

39. Rose, in Plaintiff's Work, wrote and composed the iconic guitar solo and hook of "The Fly," which are recognizable to any person listening to the two songs.

40. The writing credits for "The Fly" incorrectly omit Rose as a writer of the song.

41. Defendants have knowingly been exploiting "The Fly" without crediting Rose as a writer for more than twenty-five years.

42. Plaintiff is entitled to equitable relief to ensure that his name be added as a writer to "The Fly," because:

   a. Plaintiff suffered irreparable injury and has no recourse through the law because the right of attribution is not statutorily recognized.

   b. Monetary damages alone are inadequate to compensate Plaintiff for the loss to his professional music reputation by the non-attribution.

   c. Crediting Plaintiff would impose no hardships on any defendant.

   d. The public interest would be served by such an acknowledgment as proper attribution of every person's contributions to a creative process fosters and promotes the free exchange of ideas and fosters the arts.

43. Defendants continue to fail to acknowledge Plaintiff's role in creating "The Fly."

44. Equitable relief should include an order that Defendants be made to include Plaintiff as a writer of "The Fly."

WHEREFORE, Plaintiff PAUL ROSE respectfully prays for relief as follows:

(a) that the Court enter a permanent injunction barring the Defendants, their agents, officers and employees, and those acting in concert with it from infringing Plaintiff's copyright in any manner, including from disposing of copies of and making and distributing cassettes, CDs, digital downloads, permitting broadcast on AM or FM radio, digital radio, vinyl LPs or 45s, DVDs or other methods of delivery of the Infringing Work;

(b) that the Court enter judgment for Plaintiff against Defendants requiring Defendants to account for all gains, profits and advantages derived by Defendants from their infringement of Plaintiff's copyright;

(c) that the Court enter judgment for Plaintiff against Defendants for the maximum statutory damages pursuant to 17 U.S.C. Section 504(c) or alternatively, at Plaintiff's election, for actual damages plus Defendants' profits stemming from their infringement of Plaintiff's copyright in an amount to be determined by the Court but no event less than $5,000,000.00;

(d) that the Court enter judgment for Plaintiff requiring Defendants to give songwriting credit and co-authorship to Plaintiff;

(e) that the Court award Plaintiff his costs in this action, including attorneys' fees and interest; and

(f)  such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        February 27, 2017

                        THE LAW OFFICE OF THOMAS M. MULLANEY

By:  _____
      Thomas M. Mullaney (TM-4234)

      489 5th Avenue, Suite 1900
      New York, New York 10017
      212-223-0800

      Attorneys for Plaintiff Paul Rose