UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                        :        17cv1471(DLC)
PAUL ROSE,                              :
                                        :        OPINION AND ORDER
                            Plaintiff,  :
                                        :
            -v-                         :
                                        :
PAUL DAVID HEWSON p/k/a BONO, DAVID     :
HOWELL EVANS p/k/a THE EDGE or EDGE,    :
ADAM CLAYTON, LAURENCE JOSEPH MULLEN    :
JR., and UMG RECORDINGS, INC.,          :
                                        :
                            Defendants. :
                                        :
-------------------------------------- X

Appearances:

For the plaintiff:
Thomas M. Mullaney
The Law Office of Thomas M. Mullaney
489 Fifth Avenue, 19th Floor
New York, New York 10017

For the defendants:
Brendan J. O'Rouke
Sandra A. Cranshaw-Sparks
David. A. Munkittrick
Tiffany M. Woo
Proskauer Rose LLP
Eleven Time Square
New York, New York 10036

DENISE COTE, District Judge:

    Paul Rose, a composer and musician, brings this copyright

action against the four members of the band U2 as well as music

industry defendant UMG Recordings, Inc. ("UMG").  In his Amended

Complaint ("FAC"), Mr. Rose principally claims that defendants

infringed his copyright by willfully copying fragments from his

original musical work "Nae Slappin" to create a guitar solo for
the U2 song "The Fly."  See 17 U.S.C. § 501.  Defendants moved
to dismiss the FAC, pursuant to Fed. R. Civ. P. 12(b)(6), for
failure to state a claim upon which relief could be granted.
For the following reasons, the motion is granted.

BACKGROUND

Plaintiff Paul Rose is a British musician who lives in New
York.  Plaintiff wrote and recorded "Nae Slappin" in 1989.  "Nae
Slappin" is three minutes and thirty seconds in length.  It is
an extended guitar instrumental, backed by percussion and a
bassline.  A thirteen-second guitar riff comes near the very
beginning of the composition, after the introduction of a
rhythmic bassline.  "Nae Slappin" does not include any vocal
element, have an obvious beginning, middle, or end, or a
structure built upon a repeated melody.  Plaintiff sent a copy
of the recording to UMG's Island Records label as a "demo tape."

U2, whose individual members are named defendants and live
in New York, California, and Ireland, is a widely recognized
rock music band.  UMG, a global music corporation with its
headquarters in New York, has manufactured and distributed
records and albums for U2 since 1980.  On October 21, 1991, U2
released the song "The Fly," to stir excitement for the band's
forthcoming album, "Achtung Baby."  "The Fly" was an

international success and U2 still broadcasts a recorded version
of the song during its live concerts.

"The Fly" is a rock composition with lyrics, a melody, and
a chorus.  It is four minutes and twenty-five seconds in length
and features a twelve-second guitar solo about two-thirds of the
way through the song.

Plaintiff alleges three similarities between a thirteen-
second segment of his "Nae Slappin" and a twelve-second segment,
which features a guitar solo, in U2's "The Fly."[1]  Specifically,
the alleged infringing similarities include: (1) a virtual note
for note reproduction of the guitar line, with identical backing
(the "Guitar Line"); (2) the use of a tambourine to "reinforce"
the beat; and (3) the same drum, percussion and bass line.  The
FAC also alleges that the first chord change in "Nae Slappin,"
which it asserts is from E7 to A7, and which occurs over the
course of a separate seven-second fragment, is copied during a

---

[1] Exhibit A to the FAC is an audio disc which contains fragments
of both works played in repetition.  Exhibit B of defendants'
motion to dismiss is an audio disc which contains full
recordings of the two works.  The thirteen-second segment of
plaintiff's work is heard at 0:05 – 0:18 of Exhibit A to the
FAC; it is heard at 0:09 – 0:22 on the first track of Exhibit B
to defendants' motion.  The twelve-second segment of the
defendants' work is heard at 0:19 – 0:31 of Exhibit A to the
FAC; it is heard at 2:27 – 2:39 on the second track of Exhibit B
to defendants' motion.

six-second passage in "The Fly."[2]  The FAC also alleges that the "dimensions of sound" of the two works are substantially similar.

Plaintiff commenced this lawsuit on February 28, 2017.  The original complaint generally alleged copyright infringement.  In response to a motion to dismiss, which argued inter alia that there was no substantial similarity between the two works, Mr. Rose filed the FAC.  In the FAC, the plaintiff identified, with precise time-stamps, for the first time the four allegedly protected elements of "Nae Slappin" listed above.  Exhibit A to the FAC, a recording of excerpts of the plaintiff' and the defendants' works, does not include the full works at issue.  Instead, it includes only those clips from "Nae Slappin" and "The Fly" on which it rests its claims, played back to back.  The clips are looped, and then repeated in ever shorter fragments.  The defendants' renewed motion to dismiss became fully submitted on September 11.  The defendants attached a recording of the complete works to its motion papers as Exhibit

---

[2] The seven-second segment of plaintiff's work which contains the chord change is heard at 1:08 – 1:15 of the Exhibit A; it is heard at 0:26 – 0:33 of the first track of Exhibit B to defendants' motion.  The six-second segment of the defendants' work is heard at 1:16 – 1:22 of Exhibit A to the FAC; it is heard at 2:38 – 2:46 on the second track of Exhibit B to defendants' motion.

B.  In opposition to this motion, the plaintiff asserts infringement based on the doctrine, described below, of fragmented literal similarity.

## DISCUSSION

When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6),  a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  The complaint will survive the motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

In ruling on a motion to dismiss, a "district court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) (citation omitted).  "In a copyright infringement action, the works themselves supersede and control contrary descriptions of them" contained in the pleadings.  Id. (citation omitted).  The plaintiff does not

suggest that the copies of the two works at issue, contained on defendants' Exhibit B, should not be considered on this motion.

To state a claim for copyright infringement, a plaintiff must plausibly allege facts that demonstrate "1) that his work is protected by a valid copyright,[3] 2) that the defendant copied his work, and 3) that the copying was wrongful." Zalewski v. Cicero Builder Dev., Inc, 754 F.3d 95, 100 (2d Cir. 2014). Since "[n]ot every portion or aspect of a copyrighted work is given copyright law's protection . . . not all copying is wrongful." Id. It is the copying of the protected elements of a copyrighted work that the law forbids. Id. at 101.

Copyright protection extends to "original works of authorship fixed in any tangible medium of expression," such as musical works. 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 256 (2d Cir. 2015); 17 U.S.C. § 102(a)(2). Here, the plaintiff seeks protection for a musical composition.[4] A musical composition "consists of rhythm, harmony, and melody," and it is from these elements that originality is to be determined. New Old Music Group, Inc. v. Gottwald, 122 F. Supp. 3d 78, 88

---

[3] The FAC alleges that the plaintiff registered his copyright in England in April 1991.  The United States recognizes this registration as valid.  See 17 U.S.C. § 104.

[4] The plaintiff is not asserting rights in this action in a sound recording.

(S.D.N.Y. 2015) (citation omitted); TufAmerica, Inc. v. Diamond, 968 F.Supp.2d 588, 603 (S.D.N.Y. 2013) (citation omitted).

The "sine qua non" of all copyright protection is originality.  N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc., 497 F.3d 109, 113 (2d Cir. 2007); see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). Originality entails independent creation by the author, and "at least some minimal degree of creativity."  Feist Publ'ns, 499 U.S. at 345.  It is "universally true" that even creative works contain material that is not original, because "all creative works draw on the common wellspring that is the public domain." Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 132 (2d Cir. 2003).

In copyright cases alleging infringement of a musical composition, a court considers only a song's composition -- the notes, rhythm, and harmony, for example -- and does not consider elements of performance of the composition, like the skill with which the composition is played.  See Newton v. Diamond, 349 F.3d 591, 596 (9th Cir. 2003); New Old Music Group, 122 F. Supp. 3d at 95.  Moreover, because copyright protects neither ideas nor style, see Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 190 (2d Cir. 2012), a court will not take into account similarities merely of elements typical to the genre.

MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 194 (2d
Cir. 2004).

Generally, individual notes and common rhythms are not
protectable.  See, e.g., Acuff-Rose Music, Inc. v. Jostens,
Inc., 155 F.3d 140, 143-44 (2d Cir. 1998) (common phrase
unprotectable); McDonald v. West, 138 F. Supp. 3d 448, 456
(S.D.N.Y. 2015)(same); Poindexter v. EMI Record Grp., 2012 WL
1027639, at *4 (S.D.N.Y. Mar. 27, 2012) (single note
unprotectable); Velez v. Sony Discos, 2007 WL 120686, at *12
(S.D.N.Y. Jan. 16, 2007) (eight-measure musical phrase in song
structure is "widely used structural device"); Intersong-USA v.
CBS, Inc., 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (holding that
"common elements [that] are found in many other well-known songs
. . . are unoriginal and constitute 'scenes a faire' or
ordinary, unprotectable expression").  On the other hand, non-
banal combinations or compilations of generally unprotectable
elements can be afforded copyright protection.  Knitwaves, Inc.
v. Lollytogs Ltd., 71 F.3d 996, 1003-04 (2d Cir. 1995) ("[A]
work may be copyrightable even though it is entirely a
compilation of unprotectible elements.").

To show wrongful copying, a plaintiff must show a
"substantial similarity" between the infringing and infringed
work.  Tufenkian Imp./Exp. Ventures, 338 F.3d at 131 (citation
omitted).  When evaluating whether there is substantial

similarity between the defendant's work and the protectable elements of the plaintiff's work, "no discovery or fact-finding is typically necessary, because what is required is only a . . . comparison of the works." Peter F. Gaito, 602 F.3d at 64 (citation omitted).

> If, in making that evaluation, the district court determines that the two works are not substantially similar as a matter of law, the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief.

Id. (citation omitted). Two works are not substantially similar as a matter of law if "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or [if] no reasonable jury, properly instructed, could find that the two works are substantially similar." Id. at 63 (citation omitted).

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." Id. at 66 (citation omitted). With "inexact copies," Tufenkian Imp./Exp. Ventures, 338 F.3d at 133, the substantial similarity assessment proceeds by a comparison of the "total concept and feel of the contested works" as "instructed by common sense." Boisson v. Banian, Ltd., 273 F.3d 262, 272, 273 (2d Cir. 2001) (citation omitted). "Where the work at issue contains both protectible and

unprotectible elements, the test must be 'more discerning,' excluding the unprotectible elements from consideration." Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 70 (2d Cir. 1999) (citation omitted).

Even when there is no substantial similarity between two works when they are considered as a whole, liability may exist when a fragment of a copyrighted work has been copied.  This doctrine has come to be known as "fragmented literal similarity."  4 Nimmer on Copyright § 13.03 (2017).  Fragmented literal similarity "focuses upon copying of direct quotations or close paraphrasing." Castle Rock Ent., Inc. v. Carol Pub. Group, Inc., 150 F.3d 132, 140 (2d Cir. 1998).  "Fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure." TufAmerica, 968 F.Supp.2d at 597 (citing Newton v. Diamond, 388 F.3d 1189, 1194 (9th Cir. 2004)).

Under the fragmented literal similarity test, "the question of substantial similarity is determined by an analysis of whether the copying goes to trivial or substantial elements of the original work." TufAmerica, 968 F. Supp. 2d at 598.  See also 4 Nimmer on Copyright § 13.03.  The copied component must be significant to the author's work, since copyright protection adheres to a copyrighted work. Twin Peaks Prods., Inc. v.

Publ'ns Intern. Ltd., 996 F.2d 1366, 1372 ("[T]he concept of similarity embraces not only global similarities in structure and sequence, but localized similarity in language.  In both cases, the trier of fact must determine whether the similarities are sufficient to qualify as substantial.").

The fragmented literal similarity test therefore has two components.  It queries "whether the copying is quantitatively and qualitatively sufficient to support a finding of infringement."  Nihon, 166 F.3d at 70 (citation omitted).  In determining substantial similarity in the qualitative sense, a court considers the nature of the copying: did the defendant copy important features of the plaintiff's protected expression?  See id. at 70-71.  In determining substantial similarity in the quantitative sense, a court determines how much of the plaintiff's protected expression has been copied.  See id.  See also 4 Nimmer on Copyright § 13.03 (2017).  A quantitative analysis, "must always occur in the shadow of" the qualitative.  Nihon, 166 F.3d at 71.  Therefore, the inquiry questions not only the amount of material that was copied, but whether that material is qualitatively important to the plaintiff's work: "even if the similar material is quantitatively small, if it is qualitatively important" to plaintiff's work, there may still be infringement.  4 Nimmer on Copyright § 13.03 (2017).  Moreover, while there is no threshold number or percentage to establish

quantitative significance, where "the copyrighted work contains both original and unprotected elements, a higher quantity of copying is required to support a finding of substantial similarity than when the infringed work is wholly original." Nihon, 166 F.3d at 71.

For purposes of this motion, the defendants have accepted as true the allegations that the plaintiff has a valid copyright in "Nae Slappin" and that they had access to the work in advance of their creation of "The Fly."  They move to dismiss the action on the ground that no reasonable jury could find that the two works are substantially similar, particularly when any element of protectable expression is considered.  In opposition, the plaintiff does not contend that the defendants' work, taken as a whole, is substantially similar to his work.  Instead, as already noted, he relies on the doctrine of fragmented literal similarity.[5]  The FAC identifies four musical elements in "Nae Slappin" that are alleged to have been copied by the defendants. Three elements are contained in the same identified fragment of "Nae Slappin" -- a thirteen-second clip near the beginning of the work that includes the Guitar Line.  The fourth element,

---

[5] The defendants assert that the doctrine of fragmented literal similarity does not apply to copyright infringement of musical works apart from sampling.  This Opinion assumes, without deciding, that the doctrine of fragmented literal similarity may provide copyright protection to musical compositions.

which is a chord change, appears in another identified fragment which is slightly later in "Nae Slappin."  The FAC also includes an allegation that the "dimensions of sound" of the two works are similar.  Each of these allegations is addressed below.

  A. The Guitar Line

       To support his claim of infringement, the plaintiff principally relies on the Guitar Line in a thirteen-second fragment of "Nae Slappin," which the FAC contends was reproduced "virtually note-for-note" and with "identical backing" in "The Fly".  As a threshold matter, there is a serious question as to whether the plaintiff has plausibly identified a fragment in "Nae Slappin" that is sufficiently original to merit copyright protection.

       In neither the FAC nor its opposition to this motion does the plaintiff explain what elements of this thirteen-second segment are original, for instance, whether it is the fragment's eleven-note melody, or the arrangement of the melody with a particular backing, both, or something else.  In his opposition brief, the plaintiff asserts that the defendants' fragment reflects "the same attitude, attack, style and overall approach" as in the "Nae Slappin"'s thirteen-second fragment.  A style of playing is not ordinarily protectable expression, and there is nothing here to suggest an exception to that well-established principle.  There is also no copyright protection for what

13

appears to be the principal thrust of "Nae Slappin," that is, a demonstration of the plaintiff's skill in playing his instrument.  Neither a style of playing nor the skill with which a composition is played are protectable, only the composition itself may be protected if it is sufficiently original.

Even assuming, however, that the plaintiff can identify elements in the thirteen-second Guitar Line that are protectable, that fragment does not constitute a sufficiently "substantial" portion of "Nae Slappin" to be a protectable fragment of the work.  "Nae Slappin" is a three and a half minute composition which demonstrates the plaintiff's impressive guitar skills.  The plaintiff describes the work as "an extended improvisation of then-novel industrial rock."  In under four minutes, the guitarist demonstrates and weaves together multiple different styles of playing: from holding long notes to create melody (which is the style demonstrated in the thirteen-second fragment) to extended stretches with fast, intricate finger work.  He also creates a variety of striking sounds from the guitar, including a high pitched squeal.  For a lengthy coda, the instrument sounds like a racing car or truck engine.

At thirteen seconds, which amounts to six percent of the recording, the fragment is not quantitatively significant to "Nae Slappin."  More importantly, it is not qualitatively significant, when measured against the entirety of plaintiff's

14

composition.  The fragment appears only once near the beginning of the recording; it is not repeated.  It is one of multiple, at times seemingly random, guitar lines and styles strung together over the course of the composition.  In the thirteen-second fragment, the guitarist is lingering on and accenting one note at a time, creating a melodic line.  The plaintiff does not suggest that that melody is ever revisited in the piece.  While this style of playing extends briefly beyond the fragment and the lingering-on-a-note-style appears again later on, the actual melody, notes, or general theme of the fragment are abandoned. Considering the fragment under a theory of fragmented literal similarity, the fragment must be considered in light of the work as a whole.  In that context, the Guitar Line is, as a matter of law, not a substantial component of "Nae Slappin."

It is telling that the plaintiff, in opposition to this motion, acknowledges that to sustain a claim of copyright infringement based on an alleged copying of a fragment, the fragment must be a "substantial element of plaintiff's work." The plaintiff also acknowledges that he will have to establish that the fragment "is of great qualitative importance" to "Nae Slappin" given that the fragment is a "relatively small" portion of the work.  Despite his description of this burden, he does not identify any way in which the fragment is a "substantial

element" or of qualitative importance to "Nae Slappin."  Such a description appears in neither the FAC nor in his brief.

The closest that the plaintiff comes to describing the significance of the fragment to the whole of plaintiff's work is the following:  "[T]he opening riff of Nae Slappin is played on the open low E string on a guitar with a clean and undistorted sound.  It is a very distinctive and important foundation of the structure and definitive driving sound of Nae Slappin, heard throughout the track."[6]  This description does not illuminate the significance of the fragment to the work.  Simply asserting that this fragment is an "important foundation" to the structure and driving sound is a conclusory assertion that could apply to any preamble to a musical work.  The entire work is a guitar solo. The opening Guitar Line does not establish a theme or melody for the work.  The style of playing in the fragment extends beyond the fragment, and reappears in shorter clips later in the work, but is just one of many skillfully demonstrated styles.

Finally, even if the Guitar Line were both sufficiently original and significant to the plaintiff's work such that the Line were protectable, a reasonable jury could not find that the

---

[6] This description certainly raises questions as to whether the plaintiff can identify any element of the fragment that is protectable.  Playing on an "open low E string", playing with "a clean and undistorted sound", or having a "driving sound" are not.

16

isolated Guitar Line in "Nae Slappin" was literally copied or nearly literally copied in the allegedly infringing clip from "The Fly."  That level of copying is required to pursue an infringement claim under the fragmented literal similarity test. The record in this action does not include sheet music to assist in an evaluation of the notes, but the audio clips in Exhibit A to the FAC are sufficient to demonstrate that a reasonable juror could not conclude that the two portions of the works are sufficiently close.

Even if the two fragments demonstrate similar styles of playing the guitar -- lingering on a few notes to create a melody -- they do not create the same melody, and the plaintiff does not represent that they do.  While both begin with one note held for a few beats, followed by playing three shorter notes down the octave, any possible similarity ends there.  The "Nae Slappin" fragment continues on to include two more lower notes, to create a line of six notes, while the defendants' picks up again after four notes to repeat the same phrase, only ending on a different fourth note.  The plaintiff's fragment continues, after its first six-note phrase, to a similar sounding but distinctly different -- in note and rhythm -- phrase than the one immediately preceding it.  Those two phrases make up the entirety of the plaintiff's Guitar Line fragment.  The defendants' fragment, on the other hand, consists of three

17

shorter phrases strung together.  The first two, four-note phrases are nearly identical, ending on different notes, and the third phrase, which also begins with the same three notes, extends a few beats longer and ends with a trill on the third-to-last note.  The defendants' fragment does not, therefore, recreate the notes, sounds, or rhythm of the plaintiff's work in a way that would permit a finding that the copying was sufficiently close to find infringement under the fragmented literal similarity doctrine.  As the plaintiff acknowledges, the doctrine of fragmented literal similarity requires that the infringer create an "exact or nearly exact" duplicate of the plaintiff's work.  Based on Exhibit A, the plaintiff has not plausibly pled that the defendants' work contains a literal or nearly literal copy of the identified portion of the plaintiff's work.

   B. The Tambourine

    The use of a tambourine in the "Nae Slappin" fragment is not protectable.  The plaintiff claims infringement because the parties both use a tambourine to "reinforce" the beat in the passages of their respective works that contain the Guitar Line and the alleged copy of that Line.  Although a tambourine is used in both fragments, it is not used in the same way.  The tambourine in "Nae Slappin" is hit along with the snare; the tambourine in "The Fly" is shaken.  As the plaintiff also

explains, the tambourine is used to play an "alternative" pattern in "The Fly" from the pattern in "Nae Slappin."  The plaintiff argues, however, that the "simple presence of the tambourine in 'The Fly' reinforces that 'Nae Slappin' has been closely studied, dissected and copied."

The presence of the tambourine to accentuate or highlight a beat or guitar line is not an original expression that can be protected by copyright.  Nor does copyright protection extend to works inspired by a protected work.  After all, copyright law does not protect ideas; it protects expression.  While the choice of instruments may be protectable in some circumstances, for example when protection is sought for a musical arrangement,[7] the use of an instrument typical to the genre is not, by itself, original.  See 17 U.S.C. § 101.  The plaintiff, therefore, has not plausibly alleged that his use of the tambourine in the thirteen-second fragment containing the Guitar Line is original expression that is protectable.

For similar reasons, the allegation about the use of a tambourine fails to plead a claim of fragmented literal similarity.  The plaintiff does not contend that the use of the tambourine in the fragment was quantitatively or qualitatively

---

[7] 17 U.S.C. § 101, in defining a "derivative work," includes "musical arrangement," which includes orchestration.

significant to "Nae Slappin" as a whole.  Nor does the plaintiff
contend that the use of the tambourine in the Guitar Line
fragment of "Nae Slappin" and in the alleged infringing fragment
from "The Fly" are identical or nearly so.  Indeed, the
plaintiff appears to abandon any claim of fragmented literal
similarity with respect to the tambourine, instead arguing in
his opposition papers that the "simple presence" of the
tambourine in the thirteen-second passage of "The Fly"
demonstrates that the defendants copied "Nae Slappin."  For
purposes of this motion, however, the defendants have not
challenged the plaintiff's contention that they had access to
"Nae Slappin" as they were creating "The Fly."  Therefore,
evidence of such access does not address whether the use of the
tambourine in the thirteen-second fragment is protected
expression under the doctrine of fragmented literal similarity.

C. The Drum, Percussion, and Bass Line

The allegation regarding the use of "drum and percussion"
and a "bass line" during the thirteen-second passage containing
the Guitar Line also fails to state a claim.  The FAC alleges
that the drum and percussion and the bass line are "the same at
points in both songs", as can be heard in Exhibit A to the FAC.
The plaintiff appears to be describing a general rhythmic style.
As with the plaintiff's claim regarding the tambourine, the
allegations regarding the drum, percussion, and bass line are

too vague to describe protectable expression.  Indeed, in his
opposition brief the plaintiff does not address this allegation,
apparently abandoning any infringement claim based on the use of
these elements.

   And, as with the claim premised on the use of a tambourine,
plaintiff has not plausibly alleged that the use of these
rhythmic elements in the thirteen-second fragment are
quantitatively or qualitatively significant to "Nae Slappin," or
that the defendants literally copied or nearly literally copied
his original combination of drum, percussion, and bass line.
Listening to Exhibit A does not fill this gap.

   D. The Chord Change

   The FAC asserts infringement based on a chord change from
E7 to A7 that is heard in "Nae Slappin" shortly after the
fragment bearing the Guitar Line.[8]  This chord change is not
subject to copyright protection.  As with the tambourine and
percussion claim, the plaintiff's allegation is both vague and
sweeping.  A chord change is a common musical occurrence, and
the plaintiff cannot claim exclusive rights over a chord change
from an E7 to A7.  The plaintiff makes no attempt to explain how
the chord change in "Nae Slappin" is original expression: he has
not alleged that the composition, placement, or use of the chord

_____

[8] The chord change in "Nae Slappin" occurs at 1:08 to 1:15 of
Exhibit A to the FAC.

change is minimally creative in any way that would render it protectable under the copyright laws.

Further, the FAC fails to plead that the chord change is protectable under the doctrine of fragmented literal similarity. The plaintiff fails to explain how the chord change identified in the FAC is a quantitatively and qualitatively significant component of "Nae Slappin." The plaintiff simply asserts that "listeners do hear chord changes." That listeners can hear a chord change does not render it a significant element of a work. In opposition to this motion, the plaintiff seems to abandon the FAC's assertion that this single chord change states an infringement claim. Instead, he relies on the chord change to support his argument that the defendants must have had access to "Nae Slappin." Specifically, the plaintiff argues that the chord change in the two works bear "a startling resemblance." But, for purposes of this motion to dismiss, access to the plaintiff's work is not disputed.

E. The "Dimensions of Sound"

Finally, the FAC pleads that the "dimension of sound" in the two works are substantially similar. The FAC gives no guidance as to what is meant by this allegation, and it is not discussed in the plaintiff's opposition brief. That brief focuses exclusively on the doctrine of fragmented literal

similarity in connection with the fragments found on Exhibit A to the FAC.

This allegation does not plead a plausible claim of infringement.  It is too vague to give fair notice to the defendants of the basis for the claim.  It does not appear to relate to any element of the work that is protectable as creative expression.  Abstract ideas are not protected by copyright.  Certainly, no reasonable juror listening to the entirety of the two works could find that they are similar. Moreover, it is impossible to apply the fragmented literal similarity test to this allegation, because the FAC does not point to specific segments of the parties' works or provide an audio guide as to what is meant by "dimensions of sound."

## CONCLUSION

The defendants' July 18, 2017 motion to dismiss is granted. The plaintiff's claims for copyright infringement are dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).  The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:   New York, New York
         January 30, 2018

```
                    _____
                         DENISE COTE
                 United States District Judge
```